UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:08-CV-00134-JHM

| | |
|---|---|
| MADISON CAPITAL COMPANY, LLC | PLAINTIFF |
| V. | |
| S & S SALVAGE, LLC,<br>and RIVER METALS RECYCLING, LLC | DEFENDANTS |
| and | |
| RIVER METALS RECYCLING, LLC | CROSS-CLAIM PLAINTIFF |
| V. | |
| S & S SALVAGE, LLC | CROSS-CLAIM DEFENDANT |
| and | |
| S & S SALVAGE, LLC | THIRD PARTY PLAINTIFF |
| V. | |
| AMERICAN MINING &<br>MANUFACTURING CORPORATION<br>and TIMOTHY P. SMITH | THIRD PARTY DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on cross motions for summary judgment by Plaintiff Madison Capital Company, LLC [DN 67], Defendant River Metals Recycling, LLC [DN 66], and Defendant S & S Salvage, LLC [DN 68]. Fully Briefed, this matter is ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

In February 2005, Community Trust Bank (CTB) issued a $1,500,000 term loan and a $350,000 revolving loan to three coal companies owned by Timothy P. Smith; American Mining and Manufacturing Corporation, American Engineering and Construction Corporation, and United States Coal Corporation (the "Smith Companies"). Smith signed a security agreement in connection with the loan pledging several pieces of the three companies' equipment as collateral for the loan as well as personally guaranteeing the loan. CTB promptly recorded and perfected its security interest in the collateral equipment.

The collateral for the loan included a Joy Longwall Mining System which contained various

pieces of underground mining equipment. The Longwall System was comprised of numerous parts including eighty-five (85) Hemscheidt Shields (the "Shields"), which were mechanized underground roof supports made of various metals that weighed approximately fifteen (15) tons per shield.

One month after securing the loan with CTB, Smith contacted Brett Keene, a commercial loan officer at CTB, to discuss selling portions of the Longwall System to C.W. Mining Company. These portions did not include the Shields. Smith already had a purchase agreement with C.W. Mining and was requesting that CTB allow the sale and release its lien on the equipment. Keene and CTB denied Smith's request to sell any portion of the Longwall System and refused to release its lien. Nevertheless, Smith sold portions of the Longwall System to C.W. Mining.

After this unauthorized sale to C.W. Mining, Smith sought out a buyer for the eighty-five Shields. In December 2005, unable to find a buyer for the Shields, Smith agreed to sell the Shields as scrap metal. The terms of the agreement to sell the Shields are disputed. Smith contends that he sold the Shields to S & S Salvage, LLC who in turn sold them to River Metals Recycling, LLC. S & S contends that it agreed to transport the Shields to River Metals for Smith and use its open account at River Metals to process the weighing of the scrap and payment. In return, S & S would receive a fee based upon the tonnage hauled to River Metals. Regardless of the nature of the transfer to S & S, River Metals bought the Shields from S & S over several days without any knowledge of Smith or the Smith Companies. River Metals issued a series of checks to S & S between December 22, 2005, and December 29, 2005, for the Shields. S & S deposited the checks in its own account, calculated and retained its fee, and remitted the remainder back to Smith in the form of two checks dated December 27, 2005, and December 31, 2005. One check was written to Smith personally and the other was written to American Mining.

In November 2005, Smith convinced Madison Capital Company, LLC to help his cash-

strapped companies by loaning American Mining $3,750,000. In January and February of 2006, Madison issued additional loans of $300,000 and $1,200,000 to Smith companies. On May 30, 2006, Madison, Smith, the Smith Companies, and CTB entered into a contribution and company interests purchase agreement, whereby the Smith Companies transferred all of their assets to a newly formed entity, American Mining & Manufacturing LLC (AMM, LLC), in exchange for a 25% equity interest in the new company and Madison contributed $4,000,000 in capital in exchange for a 75% equity interest in the new company. As part of this agreement, AMM, LLC was added as an additional borrower on the CTB bank loan and Smith reaffirmed his absolute and unconditional personal guarantee of the original bank loans. Smith was retained as CEO of the new LLC, and shortly after the creation of AMM, LLC, he requested additional capital from Madison. On July 11, 2006, AMM, LLC terminated Smith's employment with the company.

In September 2006, Madison purchased CTB's position as a secured creditor of the Smith Companies by way of an assignment, which included a mutual general release of all claims against one another. Madison, as the assignee of CTB's interests, then pursued Smith through litigation for his personal guarantee of the CTB bank loans, eventually obtaining a judgment against him on August 26, 2008 in the amount of $1,200,000. After securing its judgment against Smith, Madison filed suit against S & S, in November 2008, for its part in the sale of the Shields and then amended its complaint to include River Metals on February 13, 2009.

### III. DISCUSSION

Madison has filed suit against S & S and River Metals, jointly and severally, alleging claims of conversion, negligence, replevin, constructive trust, trespass, and wrongful withholding based on the respective Defendants' actions in relation to the Shields. The Defendants have denied these allegations and alleged various defenses including statute of limitations and laches. River Metals has

also claimed that it is a buyer in the ordinary course of business, which severs Madison's security interest. The parties have filed cross motions for summary judgment. Madison has moved for summary judgment on its conversion and negligence claims, while S & S and River Metals has each moved for summary judgment on all of Madison's claims.

### A. Buyer in the Ordinary Course of Business

River Metals motion for summary judgment revolves around the contention that it bought the Shields as a buyer in the ordinary course of business, and, therefore, took good title to the Shields. River Metals contends that if it had good title to the Shields then the claims asserted against it by Madison should be dismissed. As a matter of Kentucky law, a perfected security interest "continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest." Ky. Rev. Stat. Ann. § 355.9-315(1)(a) (West 2010). However, "a buyer in ordinary course of business . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." Ky. Rev. Stat. Ann. § 355.9-320(1) (West 2010). Kentucky statute defines a buyer in the ordinary course as "a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind." Ky. Rev. Stat. Ann. § 355.1-201(2)(i) (West 2010). To successfully claim protection as a buyer in the ordinary course River Metals must prove that it bought the Shields from the entity that created the security interest, and that that entity sells equipment like the Shields in its ordinary course of business.

Madison contends that S & S Salvage bought the Shields from Smith and then sold them in a separate transaction to River Metals. Under this scenario, River Metals would not qualify as a buyer in the ordinary course because it would have bought from a seller who did not create the

security interest. River Metals claims it bought the Shields from Smith through S & S, who was acting as the undisclosed agent of Smith. River Metals contends that Smith was the seller, and because he created the security interest, River Metals qualifies as a buyer in the ordinary course. However, even if River Metals recitation of the facts is accurate it would still fail to qualify as a buyer in the ordinary course because Smith is not in the business of selling mining equipment, he is in the business of mining. Smith's earlier sale of the Joy Longwall Mining System and his subsequent sale of the Shields do not make him a seller of mining equipment in the ordinary course of business. See McKenzie v. Oliver, 571 S.W.2d 102, 107 (holding that a company that leases cars does not sell cars in the ordinary course of business); Matter of Keystone General, Inc., 135 B.R. 275 (Bankr. S.D. Ohio 1991) (finding a seller of completed radios was not in the business of selling radio components); Matter of Benton Trucking Serv., Inc., 21 B.R. 574 (Bankr. Mich. 1982) (finding a debtor in the business of hauling freight was not a seller of trucks and trailers in the ordinary course of business because periodic sales of obsolete equipment are not sales in the ordinary course of business).

River Metals argues, in the alternative, that if Smith is not in the business of selling mining equipment that River Metals is still entitled to protection under the buyer in the ordinary course exception because it bought the Shields as scrap from Smith's agent, S & S, who sells scrap in the ordinary course of business. River Metals contends that the buyer in the ordinary course exception should be examined from the buyer's perspective, and that River Metals should be protected because it bought the goods through a dealer of those types of goods. The Court disagrees.

The buyer in the ordinary course exception is designed to protect buyers in the very limited set of circumstances where a lender takes a security interest in goods and then leaves the goods in the possession of a debtor who sells goods of that kind. Such an action by the lender confers apparent

authority on the debtor to sell the goods. William H. Lawrence, The "Created by His Seller" Limitation of Section 9-307(1) of the U.C.C.: A Provision in Need of an Articulated Policy, 60 Ind. L.J. 73, 80-81 (1984-85). When a lender gives its debtor the apparent authority to sell the collateralized goods in the debtor's ordinary course of business, it is appropriate that the lender bear the risk that the debtor will make unauthorized sales. However, when the lender leaves non-inventory goods in the possession of a debtor who does not sell goods of that kind, the lender does not confer authority to the debtor to sell the goods. It is the "absence of apparent authority to sell [which] is the justification for continuing the validity of the security interest in such situations even against a buyer in ordinary course of business." Id. at 87.

A lender who takes a security interest in non-inventory and properly files a financing statement disclosing that interest has done all that is required to protect its interest. When a debtor transfers the collateralized property to a dealer of such goods, such as happened here, who in turn sells that property to an unsuspecting buyer, the security interest remains attached. While this result is a harsh one given the buyer's innocence, the unsuspecting buyer still has a remedy; he can sue the transferor under a warranty of title claim. Id. at 94-95. In the instant case, it is not appropriate to consider Smith the seller of the goods for purposes of the created by the seller limitation and then consider S & S as the seller for purposes of the ordinary course of business limitation. Either Smith was the seller for all purposes of the analysis or S & S was, but River Metals cannot mix and match the parties to create protection under the exception.

River Metals final contention is that sound public policy requires that it be protected under the buyer in the ordinary course exception because it was an innocent buyer. However, CTB was also an innocent party to this transaction, and the law does not protect buyers simply because they are innocent. Merchants who unknowingly buy from a thief or individuals who unknowingly buy

goods through a wrongful sale by a bailee do not receive good title. Id. at 89. Similarly, River Metals innocence alone does not require a finding that it should receive good title under the buyer in the ordinary course exception.

Regardless of who was the actual seller of the Shields, the fact remains that CTB left non-inventory mining equipment with Smith who was not a seller of mining equipment. CTB did not confer apparent authority on Smith to sell the Shields, so it should not bear the risk of Smith's unauthorized sale. Accordingly, CTB's security interest in the Shields remained attached even after the sale to River Metals.

## B. Conversion

Madison claims that S & S and River Metals committed the tort of conversion when they each acquired the Shields. Defendants contend that this conversion claim is barred by the applicable statute of limitations. A successful claim of conversion requires a showing that (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property. Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 632 n.12 (Ky. 2005) (quoting 90 C.J.S. Trover and Conversion § 4 (2004)).

Under K.R.S. § 413.125, "[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery shall be commenced within two (2) years from the

time the cause of action accrued." This two year statute of limitations applies to claims of conversion. See Rich & Rich P'ship v. Poetman Records USA, Inc., 714 F. Supp. 2d 657, 669 (E.D. Ky. 2010) (applying K.R.S. § 413.125 to a conversion claim); Tritschler v. Haire, 2009 WL 1515763, at *4 (E.D. Ky. 2009) (applying K.R.S. § 413.125 to a conversion claim).[1]

Defendants contend that the accrual date for Madison's conversion claim was set when CTB discovered that the Shields had been sold. Madison cites Ashland Fin. Co., Inc. v. Mollett, 67 S.W.2d 717, 718 (Ky. 1934) for the proposition that the accrual date for its conversion claim was set when it made a demand for return of the property and the Defendants refused that demand.

A demand and refusal are not necessary elements of a claim for conversion where an actual conversion is alleged from the outset by the plaintiff. Joseph Goldberger Iron Co., v. Cincinnati Iron & Steel Co., 154 S.W. 374 (Ky. 1913). "[W]here conversion has occurred by way of a wrongful taking at the outset . . . demand and refusal need not be proved, which is logical since the taking is hostile at the forefront and demand for its return likely futile." Kendrick v. Standard Fire Ins. Co., 2007 WL 1035018, at *13 (E.D. Ky. 2007). To the extent that a demand and refusal occur in the case of a wrongful taking, such "a demand and refusal may afford satisfactory evidence of a conversion, [but] they do not constitute the only evidence by which a conversion may be proved." Goldberger, 154 S.W. at 375. Because a claim of conversion that is wrongful from the outset does not require a demand and refusal, the demand and refusal are likewise unnecessary for determination of the accrual date for statute of limitations purposes. See 90 C.J.S. Trover and Conversion § 55 (2010) ("If the holding or possession sounds in tort from the beginning, a demand and refusal are unnecessary for

---

[1] Madison cites Eline v. Comm. Credit Corp., 209 S.W.2d 846 (Ky. 1946) for the proposition that a claim of conversion carries a five year statute of limitations. However, that case was decided before K.R.S. § 413.125 was enacted and the Court finds that the statute of limitations for a claim of conversion is now governed by K.R.S. § 413.125.

the purpose of determining when the statute of limitations begins to run.").

The accrual date for statute of limitations purposes for such a conversion should be set based on the discovery rule.

> Under Kentucky law, the discovery rule provides that a cause of action accrues when the injury is, or should have been, discovered. However, the discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries.

McLain v. Dana Corp., 16 S.W.3d 320, 326 (Ky. Ct. App. 1999); see also Bradley v. Nat'l City Bank of Kentucky, 2004 WL 3017297 (Ky. Ct. App. 2004) (holding that the discovery rule did not toll the statute of limitations for a conversion claim because the defendant bank did not engage in any fraudulent concealment).

Even assuming that Madison can prove the necessary elements for conversion, its claim is barred by the statute of limitations. The deposition testimony of Brett Keene, the CTB loan officer assigned to the Smith Companies' loans, demonstrates that CTB knew or should have known that the Shields were sold no later than August 23, 2006. Therefore, the statute of limitations for a claim of conversion by CTB began running no later than August 23, 2006. When an assignment occurs, the assignee "simply stands in the shoes of the [assignor], subject to all equities and defenses which could have been asserted against the [assignor]." Whayne Supply Co. v. Morgan Constr. Co., 440 S.W.2d 779, 782-83 (Ky. 1969); see also Young v. Kenneth Jackson Elec., Inc., 2006 WL 2787077, at *3 (Ky. Ct. App. 2006) (holding that a conversion claim of assignee was subject to any defense that defendant may have had against assignor). The record reflects that CTB's assignee, Madison, filed the present suit against S & S on November 11, 2008, and then amended its complaint to include River Metals as a defendant. This filing date is well past the two year statute of limitations prescribed under K.R.S. § 413.125 for a claim of conversion.

Madison contends that it was unable to learn the identities of the respective Defendants until October 2008 and February 2009 and, therefore, the discovery rule should have tolled the statute of limitations until the Defendants' identities were discovered.[2] The discovery rule does not toll the statute of limitations simply because the plaintiff does not know the identity of her tortfeasor. "A person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor." McLain, 16 S.W.3d at 326. After the injury is discovered, the discovery rule will only toll the statute of limitations if the defendant engaged in fraudulent concealment. There is no allegation or evidence that either Defendant engaged in fraudulent concealment of the alleged conversion or its respective identity. Because CTB was on notice of the conversion no later than August 23, 2006, and Madison filed the present action on November 11, 2008, the Defendants have a valid statute of limitations defense against CTB and against its assignee Madison. Accordingly, Madison's motion for summary judgment on its conversion claim is denied and Defendants' motions for summary judgment are granted.

### C. Negligence

Madison contends that S & S and River Metals were negligent when they failed to conduct a UCC lien search prior to acquiring the Shields. To succeed on a claim of negligence the plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages. Mullins v. Commonwealth life Insur. Co., 839 S.W.2d 245 (Ky. 1992). Whether a duty exists is a question of law to be determined by the court. Pathways, Inc. v. Hammons, 113 S.W.3d 85, 88 (Ky. 2003). That

---

[2] While Madison claims it only learned of S & S through documents produced by Smith in October 2008, River Metals has produced an internal Madison email evidencing that in February 2007 Madison knew that S & S had been involved with the sale of the Shields.

determination is "essentially a policy determination." Sheehan v. United Serv. Auto. Ass'n, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996). "The most important factor in determining whether a duty exists is foreseeability." Pathways, 113 S.W.3d at 89 (citation omitted). "Kentucky courts recognize a 'universal duty' of care under which 'every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury.'" Lee, 245 S.W.3d at 212 (quoting Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell, 736 S.W.2d 328, 332 (Ky. 1987)).

In support of its argument that buyers of used equipment should have a duty to conduct UCC searches prior to acquiring equipment, Madison relies on Eline v. Comm. Credit Corp., 209 S.W.2d 846 (Ky. 1946). In Eline, the Kentucky Court of Appeals held that buyers of an automobile who failed to do a title search prior to obtaining the vehicle were liable for conversion. The court noted that the buyers failed to protect their interest by not conducting a title search. Id. The court finished the opinion stating "[o]bviously the [buyers] were negligent." Id. at 83. Madison is mistaken in its belief that Eline stands for the proposition that a buyer who does not conduct a title search is liable for negligence to a creditor of the goods purchased. Eline does not involve a negligence claim, nor does its analysis address the elements of a negligence claim. The Eline decision does not support Madison's position.

Madison has failed to show that purchasing used equipment to be scraped carries a foreseeable risk of harm of which Defendants should have been aware. Therefore, Madison has failed to show that a duty exists to conduct a UCC search prior to obtaining used equipment to be scraped and the Court finds that such a duty does not exist. Madison's motion for summary judgment on the negligence claim is denied and the Defendants' motions for summary judgment are granted.

**D. Replevin**

To succeed on a claim of replevin a showing must be made (1) that the plaintiff is entitled to possession of the property; (2) that the defendant exercised unauthorized control over the property; and (3) that the defendant deprived the plaintiff of the right to possession. William v. Hardesty, 2007 WL 1300979 (Ky. Ct. App. 2007) (citing 66 Am. Jur. 2d Replevin § 11 (2001)). A replevin "action 'is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.'" Id. at *2 (quoting Tewarson v. Simon, 750 N.E.2d 176, 187 (Ohio Ct. App. 2001)). Constructive possession exists when the personal property is no longer "in the defendant's actual possession, [but] is under the defendant's control." 77 C.J.S. Replevin § 28 (2010). A replevin "action is not available if the defendant has, in good faith and prior to the commencement of the action, transferred possession of the property." 77 C.J.S. Replevin § 27 (2010).

The undisputed evidence is that the Shields were immediately cut into small scrap pieces upon their arrival at River Metals' facility in December 2005. There has been no evidence presented that either S & S or River Metals is still in possession of the Shields. For all intents and purposes, the Shields no longer existed at the time this suit was filed so neither S & S nor River Metals had actual or constructive possession and control of the Shields such that possession could be given to Madison. Because the Defendants' did not have possession and control of the Shields at the time the suit was filed, summary judgment in favor of S & S and River Metals on the replevin claim is granted.

**E. Constructive Trust**

"Constructive trusts are 'raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.'" Terrill v. Estate of Terrill, 217 S.W.3d 858, 861 (Ky. Ct. App. 2006)

13

(quoting Kaplon v. Chase, 690 S.W.2d 761, 763 (Ky. Ct. App. 1985)). "Similarly . . . a constructive trust may be imposed where title is taken under 'circumstances of circumvention [or] imposition [.]'" Keeney v. Keeney, 223 S.W.3d 843, 849 (Ky. Ct. App. 2007) (quoting Middleton v. Beasley, 216 S.W. 591, 592 (Ky. 1919)). The decision to impose a constructive trust lies within the Court's discretion under its equitable powers. Keeney, 223 S.W.3d at 849.

The Court may, in its discretion, choose to create a constructive trust where equity so demands it. However, given the facts of this case, equity does not demand such an action. Plaintiff has not alleged nor can it prove that either Defendant engaged in fraud in acquiring the Shields. The undisputed evidence demonstrates that neither S & S nor River Metals was even aware of CTB or its interest in the collateral. There is no evidence that either Defendant used circumvention to gain title. This is not a situation where equity demands creation of a constructive trust, and the Court declines to create one. Defendants' motions for summary judgment on Plaintiff's constructive trust claim are granted.

### F. Trespass

Trespass requires a showing that a defendant intentionally (1) dispossessed another of the chattel or (2) used or intermeddled with a chattel in the possession of another. Restatement (Second) of Torts § 217 (1965). A defendant may be found liable for trespass to a plaintiff who is, or may by demand become, entitled to the immediate possession of the chattel if the chattel is impaired as to its condition, quality, or value. Restatement (Second) of Torts § 219 (1965). Defendant River Metals has moved for summary judgment claiming that neither Madison nor CTB has ever held title to the Shields. However, a plaintiff need not hold title to succeed on a trespass claim so long as she is immediately entitled to possession or may become entitled by demand. The security agreement signed by Smith stated that disposal of the collateral without the prior consent of CTB constituted an

event of default. Under K.R.S. 355.9-609(1)(a), a secured party may take possession of collateral after a default. Smith's agreement with S & S to transport the Shields to River Metals and sell them without the consent of CTB was an event of default under the security agreement. Upon that default, CTB had the right, under Kentucky law, to immediate possession of the Shields.

River Metals next argues that it did not have the requisite intent to interfere with CTB's possession of the Shields. However, the necessary intent is present when

> an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act. It is not necessary that the actor should know or have reason to know that such intermeddling is a violation of the possessory rights of another.

Restatement (Second) of Torts § 217 cmt. c (1965). According to Comment (c) of § 217, a claim for trespass only requires that the defendant intend to use the chattel. The necessary intent is present even when a defendant interferes with a possessory right under a mistake of law or fact which leads him to believe his action is privileged. Id. Therefore, River Metals is only required to have the intent to use the Shields, which it did. Accordingly, Defendants' motions for summary judgment on the trespass claim are denied.

### G. Laches

S & S and River Metals also claim that laches bars Madison's suit. "[T]he doctrine of laches will bar a claim where an unreasonable delay in asserting [the claim] resulted in disadvantage or prejudice to the opposing party." Joseph v. Joseph, 2009 WL 1974596, at *3 (Ky. Ct. App. 2009). Under Kentucky law, the application of the doctrine of laches is left to the discretion of the court to be decided by the unique circumstances of each individual case. Cherry v. Augustus, 245 S.W.3d 766, 774 (Ky. Ct. App. 2006) (citing American Wire-Nail Co. v. Bayless, 15 S.W. 10, 12 (Ky. 1891)). When a court is examining a laches defense

> there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not. What is the equity of the case is the controlling question. Courts of chancery will not become active except on the call of conscience, good faith, and reasonable diligence. The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.

Plaza Condo. Ass'n, Inc. v. Wellington Corp., 920 S.W.2d 51, 54 (Ky. 1996) (citation omitted).

In Finnerty v. Radioshack Corp., 2010 WL 3069608 (6th Cir. 2010), the court found that the plaintiff's claim was barred by the doctrine of laches when she amended her complaint to add a second defendant only after the original defendant corporation became insolvent. The court found the delay prejudiced the second defendant because it resulted in difficulty finding witnesses and documents associated with the insolvent defendant as well as the inability of the second defendant to seek indemnification from the insolvent defendant. Id. at *5.

S & S claims that CTB (and Madison) should have known that the Shields were sold without authorization by June 2006 when CTB took inventory of the collateral after Smith defaulted on the loan. An internal Madison email demonstrates that by February 2007, at the latest, Madison was aware that S & S was involved with the sale of the Shields. However, Madison did not file suit against S & S until November 2008, two months after it obtained a $1,200,000 judgment against Smith personally. S & S claims that Madison's delay in filing suit was unreasonable and prejudiced its ability to seek indemnification from Smith.

However, S & S has failed to produce evidence to support that claim. While S & S has shown that Madison has a $1,200,000 judgment against Smith, it has not shown that Smith is unable to indemnify S & S. Questions of fact remain regarding the amount of prejudice, if any, resulted from Madison's delay in filing suit. These questions of fact indicate summary judgment is not appropriate.

16

Therefore, Defendants' motions for summary judgment on the defense of laches are denied.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Madison's Motion for Summary Judgment as to the conversion and negligence claims [DN 67] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant River Metals' Motion for Summary Judgment as to all of Plaintiff Madison's claims and Request for Oral Argument [DN 66] is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** as to the conversion, negligence, replevin and constructive trust claims and is **DENIED** as to the trespass and wrongful withholding claims and the request for oral arguments.

**FURTHER** that Defendant S & S's Motion for Summary Judgment as to all of Plaintiff Madison's claims [DN 68] is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** as to the conversion, negligence, replevin and constructive trust claims and is **DENIED** as to the trespass and wrongful withholding claims.

cc: counsel of record