# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**CIVIL ACTION NO. 4:08-CV-00134-JHM**

| | |
|---|---|
| **MADISON CAPITAL COMPANY, LLC** | **PLAINTIFF** |
| V. | |
| **S & S SALVAGE, LLC,** and **RIVER METALS RECYCLING, LLC** | **DEFENDANTS** |
| and | |
| **RIVER METALS RECYCLING, LLC** | **CROSS-CLAIM PLAINTIFF** |
| V. | |
| **S & S SALVAGE, LLC** | **CROSS-CLAIM DEFENDANT** |
| and | |
| **S & S SALVAGE, LLC** | **THIRD PARTY PLAINTIFF** |
| V. | |
| **AMERICAN MINING & MANUFACTURING CORPORATION** and **TIMOTHY P. SMITH** | **THIRD PARTY DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant River Metals Recycling, LLC's Daubert Motion to Preclude Testimony of Plaintiff's Experts [DN 69], and Defendant S & S Salvage, LLC's Motion to Exclude Plaintiff's Expert Witnesses [DN 70]. Fully Briefed, this matter is ripe for decision.

## I. BACKGROUND

This suit is based on claims of conversion, negligence, replevin, constructive trust, trespass, and wrongful withholding against S & S and River Metals due to the unauthorized sale of eight-five

Hemscheidt mining shields (the "Shields"). A scheduling order was set by the Magistrate which required that Madison disclose its expert witnesses no later than March 30, 2010 and that the Defendants each disclose any expert witnesses no later than April 30, 2010. On March 30, 2010, Madison made its Fed. R. Civ. P. 26(a)(2)(A) disclosures. Madison disclosed that it had not retained any expert witnesses, but that it would elicit the expert opinion of Carl Bentley. Bentley had performed an appraisal of the Longwall System for CTB in February 2005 to determine its value as collateral for the original loan made to the Smith Companies by CTB. In that appraisal Bentley valued the Shields at $680,000.00. During his deposition on April 28, 2010, Bentley revealed that he came to that figure based on several factors: (1) he personally inspected the Shields; (2) researched sales and auctions to determine comparables; (3) spoke with people who bought and sold shields of this type; and (4) discounted the value of the Shields to their liquidation value based on their general condition. When pressed on who he contacted and what the comparables revealed, Bentley admitted that he could not remember who he specifically called and that he no longer had the file for this particular appraisal.

On April 30, 2010, S & S and River Metals made their own Fed. R. Civ. P. 26(a)(2)(A) disclosures. S & S disclosed that it had not retained any expert witnesses, but that several possible witnesses would qualify as experts under Fed. R. Civ. P. 702. River Metals disclosed that it would rely upon the expert testimony of Rick Groenart and Lloyd James Baker, two men employed with River Metals during the period that the Shields were bought by River Metals. River Metals' experts intend to testify that the Shields only had value as scrap when they were delivered to River Metals' facility and that the price paid for the Shields was the fair market value for scrap of that kind.

After the deposition of its expert Bentley and the disclosure of River Metals' experts, Madison disclosed the addition of two rebuttal expert witnesses; Tim Coleman and Roger Daugherty.

Madison claims that the purpose of these experts is to rebut the opinion that the Shields only had value as scrap and that the scrap price paid for the Shields was not fair market value given the metallic make-up of the Shields. To this end, Coleman and Daugherty conducted a retroactive desktop evaluation of the Shields. Daugherty, who is a certified appraiser, gave Coleman the parameters and goals of the evaluation. Coleman, who is a mining engineer, then investigated the value of the Shields by (1) reading Bentley's appraisal; (2) calling three of the mining officials who last saw the Shields in operation in 2005; (3) contacting a person who recently bought a set of shields similar to the ones in question; and (4) examining a United States Geological Survey which listed the prices for scrap metal in 2005. After Coleman finished the evaluation, Daugherty examined it and then signed it.

## II. STANDARD OF REVIEW

S & S and River Metals seek to exclude the testimony of Plaintiff's expert as well as Plaintiff's rebuttal experts under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert testimony is both reliable and relevant. Mike's Train House, Inc. v. Lionel, L.L.C., 472 F.3d 398, 407 (6th Cir. 2006) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). In determining whether certain testimony is reliable, the focus of the Court "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. In Daubert, the Supreme Court

3

identified a non-exhaustive list of factors that may assist the Court in assessing the reliability of a proposed expert's opinion including (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Id. at 592-94. This gatekeeping role is not limited only to expert testimony based upon scientific knowledge, but, instead, extends to "all 'scientific,' 'technical,' or 'other specialized' matters within" the scope of Rule 702. Kumho Tire, 526 U.S. at 147-48. Whether the Court applies the Daubert factors to assess the reliability of the testimony of an expert witness "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (quotation omitted).

### III. DISCUSSION

Defendants seek to exclude all of Madison's proffered experts. Defendants' first attack Bentley and his appraisal on the basis that Bentley is not qualified as an expert and that his opinion is not reliable or able to be tested. Defendants' next attack Coleman and Daugherty claiming their designation as rebuttal experts is improper and that for this reason they should be excluded. Defendants also attack Coleman and Daugherty's qualifications, methods, and reliability.

#### A. Bentley

Defendants claim that Bentley is not qualified to give expert testimony as an appraiser of mining equipment and that his valuation is merely speculative and not reliable because Bentley did not employ a recognized methodology. The Court finds that Bentley is qualified to testify as an expert on the value of the Shields. While Bentley has not taken formal appraisal classes and does not have professional designations or credentials as an appraiser, Rule 702 does not require such qualifications. Bentley is qualified to offer an opinion based on his specialized knowledge, skill, and

4

experience in appraising and handling mining equipment. Bentley has a formal education as a diesel and mine repair mechanic and has actually worked on mining equipment underground, which familiarizes him with equipment such as the Shields. But most importantly, Bentley has twenty-five years experience appraising mining equipment for banks, coal companies, and other various firms. It is this specialized knowledge and experience that will assist the trier of fact in understanding the value of the Shields.

Defendants also claim that Bentley's opinion is not based on scientific methods and is the product of mere speculation, which prevents it from being properly evaluated. However, opinions formed on the basis of specialized knowledge and experience "do not easily lend themselves to scholarly review or to traditional scientific evaluation." First Tennessee Bank Nat'l Ass'n v. Barreto, 268 F.3d 319, 335 (6th Cir. 2001). Bentley testified that he examined the Shields personally, researched comparable sales and auctions, spoke with people who bought this type of Shield, and then discounted the Shields price by 1/2 to 2/3 in order to reach his appraisal value of $680,000. Defendants attack Bentley's opinion as unreliable because his discount of the Shields was based on a poorly formed definition of liquidation value. However, the fact that he cannot recite the legal definition of liquidation value is not determinative of the reliability of his appraisal. Bentley testified that he discounted the Shields value because of their poor condition. Regardless of how he defines the discount, the fact remains that he took the condition of the Shields and their need for maintenance into consideration in reaching his valuation.

Defendants also attack Bentley because he is no longer able to remember who he called to discuss the value of the Shields or what his research of comparable sales revealed. However, Bentley was not retained as a paid expert in anticipation of litigation. He was hired to appraise the Shields over five years ago and, due in part to the Defendants' actions, the Shields are no longer able to be

5

appraised or valued. Therefore, Bentley's appraisal remains the best source of information regarding the Shields value in 2005. While Defendants may question the accuracy of Bentley's appraisal value, that is an issue of weight not admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Bentley's appraisal and testimony remain the best source of information regarding the Shields' value in December 2005 and will assist the trier of fact in determining the value of the Shields. Therefore, Defendants' motions to exclude Bentley as an expert witness are denied.

**B. Coleman and Daugherty**

Defendants seek to exclude Madison's rebuttal experts Coleman and Daugherty on the grounds that their co-authored report and testimony are an improper attempt to bolster the testimony of Bentley, and that their qualifications, methodology, and reliability fail Daubert. Madison claims that it has proffered these rebuttal experts to rebut the testimony of River Metals' experts that (1) the Shields only had value as scrap when they were delivered to River Metals' facilities; and (2) that the fair market value of the scrap was the price paid by River Metals, $215,000. Coleman and Daugherty's report claims that the Shields had value based on interviews with former users of the Shields and Bentley's appraisal. The report further confirms that Bentley's appraisal was reasonable.

In Baker v. Chevron USA, Inc., 680 F. Supp. 2d 865 (S.D. Ohio 2010), the court was presented with a rebuttal report from plaintiffs' expert "five months after the deadline for filing expert reports, after [defendant] took his deposition, and after [defendant] moved to exclude his opinions" from the plaintiffs' case-in-chief. Id. at 878-79. The court excluded plaintiff's proffered rebuttal expert finding that the expert's report "is not a true rebuttal report. Rather, it constitutes an improper attempt to correct the weaknesses and improprieties of his original reports [which were excluded] by

6

[defendant] in its principal Daubert motion." Id. at 879. See also Pride v. BIC Corp., 218 F.3d 566, 578-79 (6th Cir. 2000) (affirming district courts denial of several motions to modify scheduling order to disclose experts as these motions were a "'transparent attempt to reopen the Daubert hearing now that the weaknesses in [Pride's] expert testimony have been pointed out.'"); In re Air Crash Disaster, 86 F.3d 498 (6th Cir. 1996) (finding that a party cannot introduce experts "merely by sticking the label 'rebuttal' on a neglected part of its affirmative case".)

Madison's rebuttal experts Coleman and Daugherty are a means of bolstering Madison's primary expert Bentley and its case-in-chief. This is an impermissible use of rebuttal experts. Coleman and Daugherty were employed to verify the reasonableness of Bentley's report shortly after Bentley was deposed and demonstrated shaky testimony on the value of the Shields. Furthermore, they were told that the report needed to be conducted very quickly, apparently to allow Madison to disclose them as rebuttal experts within the deadline set by the scheduling order. Coleman and Daugherty's designation as rebuttal experts appears to have occurred because the deadline for disclosing experts for Madison's case-in-chief had already passed. Madison had ample time to identify any weakness in its expert Bentley and to retain Coleman and Daugherty as experts. However, Madison chose not to do so. The Court will not allow them to now introduce expert testimony belonging in its case-in-chief masquerading as rebuttal expert testimony.

To the extent the rebuttal experts opine on the scrap value of the Shields, the Court finds this testimony should also be excluded. Plaintiff bears the burden of proving its damages, which is the fair market value of the Shields at the time of the alleged conversion or trespass. If Plaintiff wished to advance an argument that the fair market value of the Shields was different than the price paid by River Metals due to the Shields metallic make-up, it should have included an expert qualified to testify as such in its case-in-chief. It cannot now use the opportunity for rebuttal to introduce

evidence it failed to account for in its case-in-chief. The Court does not think the designation and inclusion of Coleman and Daugherty as rebuttal experts is proper. Therefore, the Court finds that Defendants' motions to exclude Coleman and Daugherty's testimony as rebuttal experts should be granted, and Coleman and Daugherty's expert testimony is excluded.[1]

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant River Metals' Daubert Motion to Preclude Testimony of Plaintiff's Experts [DN 69] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** so as to preclude the testimony of Coleman and Daugherty and is **DENIED** as to the testimony of Bentley.

**IT IS FURTHER ORDERED** that Defendant S & S's Motion to Exclude Plaintiff's Expert Witnesses [DN 70] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** so as to exclude the testimony of Coleman and Daugherty and is **DENIED** as to the testimony of Bentley.

cc: counsel of record

---

[1] Finding this theory to be dispositive of the issue, the Court expresses no opinion as to Defendants' other grounds for exclusion of Coleman and Daugherty.