UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:08-CV-00134-JHM

| | |
|---|---|
| MADISON CAPITAL COMPANY, LLC | PLAINTIFF |
| V. | |
| S & S SALVAGE, LLC,<br>and RIVER METALS RECYCLING, LLC | DEFENDANTS |
| and | |
| RIVER METALS RECYCLING, LLC | CROSS-CLAIM<br>PLAINTIFF |
| V. | |
| S & S SALVAGE, LLC | CROSS-CLAIM<br>DEFENDANT |
| and | |
| S & S SALVAGE, LLC | THIRD PARTY<br>PLAINTIFF |
| V. | |
| AMERICAN MINING &<br>MANUFACTURING CORPORATION<br>and TIMOTHY P. SMITH | THIRD PARTY<br>DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Madison Capital Company, LLC's Motion to Alter, Amend, or Vacate Portions of the January 19, 2011 Order [DN 90]. Fully briefed, this matter is ripe for decision. For the following reasons, the Court **DENIES** the Plaintiff's motion to amend and **GRANTS** summary judgment on the remaining claims to Defendants.

### I. BACKGROUND

The facts giving rise to this case are laid out in detail in the Court's January 19, 2011,

Memorandum, Opinion and Order. The abridged version follows: Community Trust Bank ("CTB") issued several loans to mining companies owned by Timothy P. Smith in February 2005. CTB took a security interest in several pieces of the Smith companies' mining equipment as collateral for those loans. The Smith companies encountered cash flow problems and sold some of the collateral without the authorization of CTB. The collateral sold included eighty-five (85) Heimscheidt shields ("the Shields") that were eventually purchased by Defendant River Metals Recycling, LLC ("River Metals") as scrap metal in December 2005.

The sale of the collateral did not alleviate the cash flow problems and the Smith companies took on a new investor in Plaintiff Madison Capital Company, LLC ("Madison"). Madison and the Smith companies eventually formed American Mining & Manufacturing LLC ("AMM, LLC") in June 2006. AMM, LLC assumed the debt from the earlier CTB loans to the Smith companies and defaulted on that debt sometime in July 2006. After the default, CTB catalogued the collateral in the field and learned that several pieces were missing, including the Shields. In September 2006, Madison purchased CTB's position as a secured creditor of the Smith companies by way of an assignment. Madison filed the instant suit in November 2008 against River Metals and S & S Salvage, LLC ("S&S") claiming among other things conversion and trespass for their unauthorized purchase of the collateralized Shields.

On January 19, 2011, the Court issued a Memorandum, Opinion and Order partially granting Defendants S&S's and River Metals' motions for summary judgment on Plaintiff Madison's Complaint. The Court granted summary judgment to Defendants on all of Plaintiff's claims except for the trespass and wrongful withholding claims. Plaintiff now seeks to have its conversion claim reinstated and an order declaring Defendants' liable for the trespass claim absent a showing at trial

2

of an applicable affirmative defense. In their responses, Defendants have also requested summary judgment as to the trespass claim.

## II. STANDARD OF REVIEW

The Sixth Circuit recognizes that a district court may reconsider an interlocutory order[1] both under the common law and Federal Rule of Civil Procedure 54(b). Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed. Appx. 949, 959 (6th Cir. Feb. 6, 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Id. (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)). See also United States v. Lexington-Fayette Urban Cnty. Gov't, 2008 WL 4490200, at *1 (E.D. Ky. Oct. 2, 2008); Edmonds, 2008 WL 3820432, at *2.

## III. DISCUSSION

Plaintiff has first requested that the Court reconsider its grant of summary judgment regarding the conversion claim. In its January 19, 2011, Memorandum, Opinion and Order, the Court found that

> [t]he deposition testimony of Brett Keene, the CTB loan officer assigned to the Smith Companies' loans, demonstrates that CTB knew or should have known that the Shields were sold no later than August 23, 2006. Therefore, the statute of limitations for a claim of conversion by CTB began running no later than August 23, 2006.

Memorandum, Opinion and Order, Jan. 19, 2011 [DN 86], at 10. Because CTB's assignee, Madison

---

[1] Although Plaintiff moves for reconsideration under Rules 59 and 60, as there has been no judgment in this matter, i.e. "a decree [or] any order from which an appeal lies[,]" Fed. R. Civ. P. 54(a), the relief the plaintiff seeks is only available under Rule 54(b), see Edmonds v. Rees, 2008 WL 3820432, at *2 (W.D. Ky. Aug. 13, 2008) ("both Rule 59 and Rule 60 are only applicable to final orders or judgments.") (citation omitted).

3

filed the instant lawsuit on November 11, 2008, the Court found that its claim of conversion was barred by the two year statute-of-limitations.

In support of its current motion, Plaintiff has filed the affidavit of Brett Keene, wherein he states that a letter was discussed during his deposition, but never produced, which confused him as to what collateral was being addressed. Due to this confusion, Madison now claims that Keene's deposition does not demonstrate the absence of a genuine dispute of material fact regarding when CTB knew the Shields had been sold. The Court disagrees.

During his deposition Keene stated that after the Smith companies defaulted on their loans with CTB that CTB went into the field and cataloged its collateral. (Keene Depo. 38:12-17, 65:20-66:20, 73:18-74:7.) When CTB compared the collateral listed in the loans and the collateral that was in the field, it realized that there were several pieces missing, principally the Shields and the other portions of the Joy Longwall Mining system. (Id. at 66:2-7.) CTB was able to determine that the portions of the Joy Longwall Mining system were sold to C.W. Mining Company based on a letter from Mr. Smith sent in March 2005. CTB's counsel sent a letter to C.W. Mining on August 23, 2006, informing C.W. Mining of CTB's security interest in the Joy Longwall Mining system. The August 23rd letter is the basis of the supposed confusion on this issue. Keene's affidavit states that because he was never shown the August 23rd letter, during his deposition, that he became confused regarding when CTB discovered that the Joy Longwall Mining system had been sold and when CTB discovered that the Shields had been sold.

Applying the Rule 54(b) standard, the Court finds no reason to reconsider its prior order. First, the Court notes that the evidence that Plaintiff has produced in support of its motion to reconsider was clearly available at the summary judgment stage. Second, even considering Keene's

4

statement that he was confused by the August 23rd letter, Keene's deposition demonstrates that CTB became aware that the Shields were missing sometime between July and September of 2006. Looking to Keene's deposition, there are four separate instances where Keene acknowledges that CTB knew the Shields were missing.

Before the August 23rd letter was discussed at his deposition, Keene acknowledged that CTB knew that the Shields were missing. Keene was asked:

> Q: Did you ever become aware of the sale of the shields?
> A: Once the loan defaulted and we went out to take a look at everything and we were kind of taking inventory of everything, we saw that they were gone.

(Keene Dep. 38:12-17.) Thereafter, Keene was told of the August 23rd letter to C.W. Mining and was then asked:

> Q: When you learned there was certain equipment missing, what equipment did you learn was missing?
> A: If I recall correctly, I think we sent Mr. Bentley back out there to inventory everything and I think we discovered -- I went out there and actually met him, and I don't remember the dates of that. And I think that he pointed out that, you know, that those wasn't there where he had looked at them before, I guess.
> Q: And when you say those, to what are you referring?
> A: To the shields and the longwall.

(Keene Dep. 65:20-66:7.) Keene was then asked again about the Smith companies' default:

> Q: What was the nature of Mr. Smith or his companies' default? Was it failure to pay?
> A: Yes, delinquent payment.
> Q: And that happened shortly after the execution of the June '06 documents?
> A: Based on the timing of the other documents, yes.
> Q: And we already talked about this. That's what precipitated CTB to get out there and look at its collateral?
> A: Correct.
> Q: Other than the shields we're talking about today and the CW equipment, was there any other missing equipment?
> A: Not that I'm aware of.

(Keene Dep. 73:18-74:7.) Lastly, regarding the assignment of the loans to Madison, Keene was asked:

> Q: And at the time of this assignment, CTB was aware that the shields were gone?
> A: That timeframe -- Just going by your letter I was having trouble recollecting the time. Was the letter from Mr. Receski prior to that?
> Q: The letter from Mr. Receski was dated August 23 of '06 to CW Mining regarding equipment sold to them.
> A: Okay. And what was the Madison agreement entered?
> Q: The Madison agreement [CTB's assignment to Madison] culminated in September of '06.
> A: So, yes, we probably were aware of it at that time.
> Q: And was CTB aware that in particular the shields that we are here for today were missing?
> A: That's my understanding.

(Keene Dep. 77:13-78:7.)

While there may be some dispute as to the exact date on which CTB discovered that the Shields were gone, Keene's deposition testimony demonstrates that CTB was aware that the Shields were missing prior to the assignment to Madison in September 2006. Keene consistently states in his deposition that CTB became aware that the Shields were missing after the Smith companies' default in July. There is also testimony from Keene that it was his understanding that CTB was not involved with the loans after the September assignment to Madison. (See Keene Dep. 78:15-20 ("I don't know with certainty, but I would think once that [assignment] was complete, that [CTB] would not do anything else.")) Given Keene's repeated statements regarding the discovery that the Shields were missing in July or August, his statement that CTB was aware that the Shields were missing prior to the assignment, and his statement that CTB would not be involved with the loans after the assignment, the only reasonable inference that can be drawn is that CTB learned that the Shields were missing prior to the September assignment. (See Keene Dep. 77:13-78:20; see also Letter from Timothy P. Smith, Feb. 18, 2010 [DN 50] ("Community Trust Bank gave notice to plaintiff that said

6

assets had in fact been sold prior to Madison purchasing assets from Community Trust Bank.")) This evidence demonstrates that Madison's assignor knew of its injury prior to November 11, 2006,[2] and that its claim for conversion is barred by the applicable statute of limitations. Therefore, the Court denies Plaintiff's motion to alter, amend or vacate its order as to the conversion claim.

In their separate responses, Defendants have moved the Court to enter summary judgment against Plaintiff on the trespass claim based on a statute-of-limitations argument. "[A] district court may enter summary judgment *sua sponte*, 'so long as the losing party was on notice that she had to come forward with all her evidence.'" Grand Rapids Plastics, Inc. v. Lakian, 188 F.3d 401, 407 (6th Cir. 1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986)). The Court finds that Plaintiff was on notice of the application of the affirmative defense of statute-of-limitations because it was raised as an affirmative defense in earlier motions for summary judgment. Therefore, the Court finds that it may address the issue at this stage *sua sponte*.

Defendants River Metals and S&S have requested, in their responses to Plaintiff's motion to alter, vacate, or amend, that the Court enter summary judgment as to Plaintiff's trespass claim on the grounds that it is barred by the two year statute-of-limitations found in K.R.S. 413.125.[3] Plaintiff argues that the trespass claim is clearly governed by the five year statute-of-limitations found in 413.120(4),[4] and as such, is timely. Although Defendants have moved only as to the trespass claim,

---

[2] Because Plaintiff filed its suit on November 11, 2008, the statute of limitations bars any conversion claim which accrued prior to November 11, 2006.

[3] K.R.S. § 413.125 states in pertinent part that "[a]n action for the taking, detaining or injuring of personal property . . . shall be commenced within two (2) years from the time the cause of action accrued."

[4] K.R.S. § 413.120(4) states in pertinent part that "[t]he following actions shall be commenced within five (5) years after the cause of action accrued . . . An action for trespass on real or personal property."

7

since the Court is addressing this *sua sponte*, the Court finds that it is appropriate to address the issue of statute-of-limitations as to both the trespass and wrongful withholding claims.

The first issue the Court must address is whether the trespass claim should properly be viewed as a claim for conversion. A claim of trespass to chattels entails "intentionally dispossessing another of the the chattel or using or intermeddling with a chattel in the possession of another." Caldwell's Kentucky Form Book, § 126.00 (2010). A claim for conversion entails "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965). The Court notes that when a plaintiff alleges a claim for conversion, the alleged conduct will almost certainly have constituted a trespass. Commentators discussing the torts of trespass and conversion have found that they are closely related to one another with the difference being the severity of the damage resulting from the tortious conduct. See 13 Ky. Prac. Series Tort Law § 7:1 (2010) ("The primary difference between [trespass] and the tort of conversion is the type of damage or deprivation. Trespass to chattels involves relatively minor damages or deprivation, while conversion involves consequences which justify the right of the plaintiff to recover the full value of the personal property affected."); Caldwell's Kentucy Form Book, § 126.00 (2010) ("[I]f return of the chattel is not possible, or the interference with its use has been so serious and significant that it is just to require the defendant to pay the full value of the chattel, then an action for conversion should be brought.").

In the instant case, the claim alleged is that the Defendants intentionally took the Shields and then scrapped them, in essence completely destroying them. As a result, Plaintiff is seeking to recover the full market value of the Shields. Plaintiff is not seeking to recover for a mere

interference or intermeddling with the Shields, rather, Plaintiff is seeking to recover for the total destruction of the Shields. As such, Plaintiff's claim is properly viewed as a claim for conversion, not trespass. This conclusion is supported by the manner in which Plaintiff has argued his measure of damages since the Court's dismissal of the conversion claim. When discussing the measure of damages for the upcoming trial of the trespass claim, Plaintiff continues to argue that "Madison is entitled to recover damages from the defendants that equal the market value of the Shields at the time of conversion." Pl.'s Resp. Def. S&S Mot. in Limine, 3. Throughout the first three pages of its response, Plaintiff repeatedly discusses the issue of damages in terms of a claim for conversion, while not once discussing the calculation of damages for a trespass claim. Given the Plaintiff's own arguments, the level of interference (total destruction), and the damages sought (full value of the Shields), the Court finds that what Plaintiff is actually seeking to recover are damages for the alleged conversion of the Shields.

The Kentucky legislature amended K.R.S. § 413.120, which called for a five year statute-of-limitations, and specifically removed from its reach actions involving the taking, detaining, and injuring of personal property (actions for conversion). The legislature determined that such actions should be governed by a two year statute-of-limitations. At the same time, the legislature left actions for trespass to personal property subject to the five year statute-of-limitations under K.R.S. § 413.120. Whether this was an oversight or the specific intent of the legislature to allow actions involving only the interference or intermeddling of personal property to be governed by the five year statute-of-limitations, it is absolutely clear that claims such as the one presented here for the total destruction of personal property are to be governed by the two year statute-of-limitations. Therefore, the Court finds that Plaintiff's claim is actually one for conversion and should be treated

9

as such, and that it is barred by the two year statute-of-limitations under K.R.S. § 413.125.

The question that must now be answered is which statute-of-limitations should control the wrongful withholding claim. "The rule is firmly established in Kentucky that a statute of limitations which specifically mentions a recognized tort applies to all actions founded on that tort regardless of the method by which it is claimed the tort has been committed." Lashlee v. Sumner, 570 F.2d 107, 109 (6th Cir. 1978). The Court sees no reason why this rule should not apply to claims of conversion governed by K.R.S. § 413.125. While K.R.S. § 413.125 does not specifically state that it applies to claims of conversion, it is clear from its language that it applies to the tort of conversion and should be considered a specific statute-of-limitations rather than a general catchall statute-of-limitations. K.R.S. § 413.125 states that "the taking, detaining, or injuring of personal property" is subject to a two year statute-of-limitations. This language is specific and is intended to apply to claims for conversion. Furthermore, it is in sharp contrast to the language of general catchall statutes-of-limitations, such as K.R.S. § 413.120(7).[5] The Court finds that K.R.S. § 413.125 is a statute that applies to the recognized tort of conversion and that although it does not specifically say conversion, that the spirit of the rule enunciated by the court in Lashlee should be applied to claims of conversion arising under K.R.S. § 413.125.

In Lashlee, the court was presented with claims of libel, negligence, interference with contractual relations, and intentional infliction of emotional distress. The court found that the libel claim was subject to a one year statute-of-limitations because it was specifically enumerated by statute. The court found that the latter three claims were also subject to the one year statute-of-

---

[5] K.R.S. § 413.120(7) states in pertinent part that "[t]he following actions shall be commenced within five (5) years after the cause of action accrued . . . An action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated."

limitations because

> [t]he underlying wrong which the complaint alleges is defamation by publication of a libelous report, and the claim of injury set out in each count springs from the act of publication. An essential element of each "cause of action" is the publication of an utterly false derogatory report about the plaintiff. The gist of the entire action is the libel, and the district court properly held that the one-year statute of limitations applies to all counts.

Lashlee, 570 F.2d at 109. Under a similar fact pattern, the court in Branham v. Micro Computer Analysis came to the same conclusion when presented with claims for libel, slander, and invasion of privacy. 350 Fed. Appx. 35 (6th Cir. Oct. 28, 2009). In Branham, the court found that the "claim for the invasion of privacy 'springs' from the same act underlying [plaintiffs] claims for libel and slander[.]" Id. at *2. The court then affirmed the trial court's decision to apply the one year statute-of-limitations for the libel and slander claims to the invasion of privacy claim.

The Court recognizes that the different claims in Lashlee and Branham that were subjected to the one year statute-of-limitations for libel and slander were not specifically enumerated under any other statute-of-limitations but were instead covered by a general statute of limitations. This differs from the instant suit where the wrongful withholding claim is specifically enumerated by statute and is subject to a five year statute-of-limitations under K.R.S. § 413.120(5). Notwithstanding that difference, the Court finds that Plaintiff's wrongful withholding claim springs from the same alleged conduct as Plaintiff's conversion claim, the Defendants purchase and destruction of the Shields. What Plaintiff has done is attempt to recover for the same injury under the guise of several different actions. However, regardless of the title of the claim, the destruction and conversion of the Shields is the basis and driving force from which each of Plaintiff's claims springs. As such, in the instant case, the Court believes that all actions founded on the tort of conversion regardless of the method by which it is claimed they have been committed are subject

11

to the statute-of-limitations for the tort of conversion; two years under K.R.S. § 413.125. Simply because the wrongful withholding claim that Plaintiff has invoked has its own specific statutes-of-limitations does not change the fact that the claim is based solely upon and springs from the injury suffered by the conversion of the Shields. Because the Court has already found that Plaintiff's conversion claim is barred by the two year statute-of-limitations found in K.R.S. § 413.125, the Court likewise finds that the wrongful withholding claim is similarly barred.

Having found that the trespass and wrongful withholding claims are barred by the statute-of-limitations, the Court finds that summary judgment should be entered in favor of Defendants River Metals and S&S. The Court also finds Plaintiff's request to narrow the issues for trial moot.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff Madison Capital Company, LLC's Motion to Alter, Amend, or Vacate Portions of the January 19, 2011 Order [DN 90] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court *sua sponte* finds that Defendants River Metals Recycling, LLC and S & S Salvage, LLC are entitled to summary judgment as to Plaintiff Madison's remaining trespass and wrongful withholding claims and that summary judgment as to those claims is **GRANTED**. As this disposes of all of Plaintiff's claims, the trial is now **VACATED.**

cc: counsel of record